```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA

        -against-                      15 Cr. 142-003 (RWS)

                                           SENTENCING
Omar LEE,                                   OPINION

                Defendant.

------------------------------------X
```

**Sweet, D.J.**

On November 5, 2015, Omar Lee ("Lee" or "Defendant") allocuted to one count of conspiracy to violate the firearms laws of the United States, with which he was charged in a complaint filed under seal on February 11, 2015. For the reasons set forth below, Lee will be sentenced to 20 months' imprisonment followed by two years' supervised release, subject to the scheduled sentencing hearing on May 31, 2016. Lee is also required to pay a special assessment of $100.

**Prior Proceedings**

Lee is named in a single count complaint filed in the Southern District of New York on February 11, 2015 (the "Complaint"). Count One charges that from at least in or about

1

November 2014, up to and including in or about November 29, 2014, in the Southern District of New York and elsewhere, Lee, D'Anthony Hill, and Armodio Lee Jr. (the "Defendants"), and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to violate 18 U.S.C. §§ 922(a)(3), 922(a)(5), and 922(a)(6).

It was a part and an object of the conspiracy that Lee, D'Anthony Hill, and Armodio Lee Jr., the Defendants, and others known and unknown, not being licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, would and did transport into and receive in the State where they reside firearms purchased and otherwise obtained outside that State, in violation of 18 U.S.C. § 922(a)(3).

It was further a part and an object of the conspiracy that Lee, D'Anthony Hill, and Armodio Lee Jr., the Defendants, and others known and unknown, not being licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, would and did transfer, sell, trade, give, transport, and deliver firearms to persons other than licensed importers, licensed manufacturers, licensed dealers, and licensed collectors, knowing and having reasonable cause to believe that those

persons do not reside in the State in which the transferor resides, in violation of 18 U.S.C. § 922(a)(5).

It was further a part and an object of the conspiracy that Lee, D'Anthony Hill, and Armodio Lee Jr., the Defendants, and others known and unknown, in connection with the acquisition and attempted acquisition of firearms from a licensed importer, licensed manufacturer, licensed dealer, and licensed collector, would and did knowingly make false and fictitious oral and written statements and furnish and exhibit false, fictitious, and misrepresented identification, intended and likely to deceive such importer, manufacturer, dealer, and collector, with respect to facts material to the lawfulness of the sale and disposition of such firearms, in violation of 18 U.S.C. § 922(a)(6).

On November 5, 2015, Lee allocuted to his conduct as charged in the Complaint. He is scheduled to be sentenced on May 31, 2016.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's

decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

4

>     (7)  the need to provide restitution to any victims of
>          the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Reports ("PSRs") with respect to Defendant's personal and family history.

**The Offense Conduct**

The Court adopts the facts set forth in the PSR with respect to the offense conduct. These facts are summarized, in brief form, below.

In approximately November 2014, law enforcement agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began investigating a scheme involving the straw man purchase of firearms in Virginia, for transport back to New York.

A confidential source (the "CS") approached ATF agents and told them that Omar Lee had approached the CS about an opportunity to quickly make money by purchasing firearms on behalf of Armodio Lee and D'Anthony Hill. Omar Lee told the CS that Armodio Lee and D'Anthony Hill were traveling from New York to Virginia on November 29, 2014 to obtain guns. Lee asked the CS to pick up Armodio Lee and D'Anthony Hill from his home and take them to a nearby gun show in Hampton, Virginia. On a recorded phone call with the CS, Omar Lee confirmed the terms of the arrangement, including that the Defendants would compensate the CS $100 for each firearm that the CS purchased on their behalf.

On November 29, 2014, the CS picked up Armodio Lee and D'Anthony Hill from Omar Lee's home and took them to the gun show, as instructed. At the gun show, Armodio Lee instructed the CS to purchase three firearms: a 9mm Taurus pistol, a KelTec 9mm pistol, and a 9mm SCCY pistol. The CS attempted to buy the 9mm SCCY pistol, but did not have enough money. D'Anthony Hill then gave the CS $11 to cover the remaining cost of the third pistol.

Agents observed the CS, Armodio Lee and D'Anthony Hill leave the gun show and enter the CS's vehicle. The agents

removed the occupants and recovered the three firearms from the floorboard on the passenger side of the vehicle.

The CS represented that the Defendants paid him $300 for the 3 guns and $50 for gas, which the CS turned over to law enforcement.

Searches of Armodio Lee and D'Anthony Hill's cell phones showed text message conversations with cell phone users in New York. One of these conversations was a discussion between D'Anthony Hill and a potential customer regarding prices for one firearm and the other conversation was an SMS text message picture of the KelTec 9mm pistol, which Armodio Lee sent to a potential customer in New York.

**The Relevant Statutory Provisions**

For Count One of the Complaint, the maximum term of imprisonment is five years. 18 U.S.C. §§ 371, 922(a)(3, 5, 6), 924(a)(1). The Court may impose a term of supervised release of not more than three years because the offense is a Class D Felony. 18 U.S.C. § 3583(b)(2). The Defendant is eligible for not less than one nor more than five years' probation because the offense is a Class D Felony. 18 U.S.C. § 3561(c)(1). The

maximum fine is $250,000.00. 18 U.S.C. § 3571(b). A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

**The Guidelines**

The Court adopts the guidelines calculation set forth in the Presentence Investigation Report. Based on the total offense level of 19 and a criminal history category of III, the guideline range of imprisonment is 37 months to 46 months.

The guideline term of supervised release is one to three years. U.S.S.G. § 5D1.2(a)(2). The Court shall order a term of supervised release when required by statute, U.S.S.G. § 5D1.1(a)(1), or except for a deportable alien who is likely to be deported after imprisonment, when a sentence of imprisonment of more than one year is imposed, U.S.S.G. § 5D1.1(a)(2). In any other case, the Court may order a term of supervised release pursuant to § 5D1.1(b).

Because the applicable guideline range is in Zone D of the Sentencing Table, the Defendant is ineligible for probation. U.S.S.G. § 5B1.1, commentary (2).

The fine range for the instant offense is $10,000 to $100,000. U.S.S.G. §§ 5E1.2(c)(3). Where the defendant is convicted under a statute authorizing (a) a maximum fine greater than $250,000, or (b) a fine for each day or violation, the Court may impose a fine up to the maximum authorized by statute. Neither is the case here and the Court will not impose a fine in this case.

Costs of prosecution shall be imposed on Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The June 24, 2014 advisory from the Administrative Office of the United States Courts provides a daily cost of $80.25, a monthly cost of $2,440.97, and an annual cost of $29,291.62 for imprisonment.

There is no victim to this crime and therefore restitution is not appropriate in this case. U.S.S.G. § 5E1.1(a).

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and in consideration of the history and characteristics of the Defendant as well as the objectives of punishment, given the Defendant's family responsibilities as a single parent, the Court will depart downward.

Lee's most serious conviction occurred approximately 20 years ago and his more recent convictions are for more minor offenses. Lee is the primary caretaker of his 13-year-old daughter, and has court determined custody of his daughter. There appear to be no other family in proximity to care for her.

To minimize the impact of this sentence on his daughter, a departure to 20 months' imprisonment is warranted.

**The Sentence**

For the instant offense, Omar Lee shall be sentenced to 20 months' imprisonment for Count One, followed by two years' supervised release. Ten months is an appropriate sentence within the guidelines range.

As mandatory conditions of his supervised release, Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not illegally possess a controlled substance.

(3) Not possess a firearm or destructive device.

(4) Cooperate in the collection of DNA as directed by the probation officer.

(5) The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

(1) The Defendant will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether the Defendant has reverted to using

        drugs or alcohol. The Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment. The Court authorizes the release of available drug treatment evaluations and reports, including presentence investigation report, to the substance abuse treatment provider, as approved by the Probation Officer.

(2) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(3) The Defendant shall provide the probation officer with access to any requested financial information.

(4) The Defendant is to report to the nearest Probation Office within 72 hours of release from custody.

(5) Defendant is to be supervised by the district of residence.

It is further ordered that Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

All other fines are waived.

It is so ordered.

New York, NY
May 27, 2016

_____
ROBERT W. SWEET
U.S.D.J.